***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. Royal Insurance Company was and is the carrier on the risk at all times relevant to this claim and GAB Robins North America, Inc., was its servicing agent with respect to this claim at all times relevant to this claim.
3. Plaintiff suffered a compensable injury by accident to her right knee on May 1, 1998 that arose out of and in the course of her employment by defendants on that date.
4. The parties stipulated to the admission of the following Industrial Commission forms: Form 18, Form 19, Form 22, Form 60, Form 28, and Form 28B.
5. Plaintiff's proposed issues for determination were:
a. Whether plaintiff's average weekly wage as of May 1, 1998 was $386.02 according to the Industrial Commission Form 22 that was prepared by defendants and stipulated into evidence.
b. Whether plaintiff has developed any back problems as a proximate result of the May 1, 1998 knee injury.
c. Whether plaintiff has reached maximum medical improvement with respect to the May 1, 1998 injury
d. What, if any, permanent partial disability plaintiff has suffered to her right knee as a result of the compensable injury that she suffered to that knee on or about May 1, 1998.
e. What, if any, pre-existing medical condition did and does plaintiff suffer from that when considered in combination with the compensable injury to her right knee prevents her from working on a permanent and total basis.
f. What, if any, other benefits is plaintiff due under N.C. Gen. Stat. §§ 97-25, 97-29, 97-30 and/or 97-31 for any temporary or permanent injury she has suffered to her capacity to work as a result of the injury that she suffered to her right knee on or about May 1, 1998.
6. Defendants proposed issues for determination included:
a. Whether plaintiff has reached maximum medical improvement with respect to the May 1, 1998 injury.
b. What, if any, permanent partial disability has plaintiff suffered to her right knee as the result of the May 1, 1998 compensable injury.
c. What other workers' compensation benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
d. What is plaintiff's average weekly wage for the 52-week period preceding her injury of May 1, 1998?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On May 1, 1998, while employed as a baker with defendants, plaintiff slipped and fell on grease on the floor and sustained a compensable injury to her right knee arising out of and in the course of her employment.
2. Plaintiff ultimately underwent arthroscopic surgery on her right knee on February 10, 1999, performed by Dr. Obremskey. Specifically, plaintiff underwent diagnostic arthroscopy with debridement of the posterior medial meniscus and chondroplasty of the medial femoral condyle. According to Dr. Obremskey's February 1999 operative note, the arthroscopic surgery revealed that plaintiff had a medial meniscus tear, meaning the tear was located on the medial or inside portion of the knee.
3. Following her surgery on April 5, 1999, Dr. Obremskey released plaintiff to return to work full duty without restrictions. In reviewing a case for a release to return to work, it is Dr. Obremskey's usual practice to ask the patient what she does in her day-to-day job and whether she thinks she can perform her day-to-day job with her current conditions. Dr. Obremskey followed this protocol through an interpreter before determining to release plaintiff to work. Dr. Obremskey did not assign a permanent partial disability rating to plaintiff's right lower extremity. Plaintiff reached maximum medical improvement as of April 5, 1999.
4. After her release to full duty, plaintiff returned to work at her regular job as a baker for defendants at her pre-injury wages on April 8, 1999. There was no reduction in the work force. She continued to work for defendants until she voluntarily resigned in July 2000. While she worked with defendants from April 8, 1999 until July 2000, no physician assigned any restrictions to plaintiff. Plaintiff, who primarily speaks Spanish, described all the difficulties she was having with her job to her doctor through her daughter who is fluent in both English and Spanish. Nevertheless, plaintiff's doctor continued to release her to work full duty while she was employed with defendants.
5. Even though plaintiff's daughter was present to translate, contemporaneous medical notes reflect that plaintiff never complained to her physician about increased job duties. Plaintiff's claim that her job duties significantly increased after her return to work in April 1999, but there was no evidence of a reduction in the work force and plaintiff's job duties with defendants did not substantially change after April 1999. When plaintiff voluntarily resigned her job with defendants, she constructively refused suitable employment.
6. Following her voluntary resignation with defendants, plaintiff began working for Laurels of Forest Glenn, a senior citizens' home, in July 2000 and worked there until November 5, 2000, when she voluntarily resigned. This job required her to load about 20 trays on a cart and wheel the cart to the nurses so that the nurses could serve the residents their meals. Plaintiff also bussed tables. Plaintiff worked at this job for approximately four hours per day. Plaintiff claims her duties at the senior citizens' home caused her knee condition to worsen.
7. On October 26, 2000, during the time period that plaintiff was working at the senior citizens' home, Dr. Burroughs, an orthopaedic surgeon, diagnosed plaintiff with a "possible recurrent meniscus tear, right knee." Dr. Burroughs used the word "recurrent" to mean that plaintiff had a new meniscus tear after her first injury. He also found she had severe flexion contracture during this time. Subsequently, on January 26, 2001, an MRI scan of plaintiff's right knee was obtained, which revealed a lateral meniscus tear, meaning that the tear was located on the outside portion of the knee. Dr. Obremskey's February 1999 operative note indicated that the tear was on the medial or inside portion of plaintiff's knee while the 2001 MRI revealed a lateral meniscus tear, meaning that the tear was located on the outside portion of the knee.
8. Based on the testimony of Dr. Burroughs and Dr. Obremskey, the Full Commission finds that plaintiff had degenerative problems in the knee prior to her injury. In addition, x-rays of plaintiff's right knee from January 21, 1999, February 2, 2001, and October 23, 2001 showed that the arthritis in her knee had increasingly worsened. Based on Dr. Burroughs' testimony, and the x-ray reports from these three dates, more change had occurred between February 2001 and October 2001 rather than between January 1999 and February 2001.
9. Based on Dr. Obremskey's testimony, traumatic arthritis usually occurs in a joint after significant trauma. It is most commonly seen following a fracture in the joint, requiring internal fixation. In this case, there was no fracture of the bone or internal fixation. Plaintiff's height was approximately 5'2" to 5'4" and her weight was approximately 150 to 180 pounds. During the time that Dr. Obremskey treated plaintiff, she was 57 to 60 years old. Based on Dr. Obremskey's opinion, to a reasonable degree of medical certainty, and other evidence of record including the fact that plaintiff's arthritis continued to get worse between February 2001 and October 2001 after she stopped working altogether, the fact that there was no evidence of a flexion contracture until October 2000 well after she left defendants and the fact that there was no evidence of a new lateral meniscus tear until January 2001 well after she left defendants, the Full Commission finds that it was probable that plaintiff's age and weight contributed to or were the primary reasons for the development of the symptomatic osteoarthritis.
10. The Full Commission finds by a preponderance of the evidence that plaintiff's right knee condition worsened as a result of her work subsequent to leaving defendant's employment, either by way of a new and different meniscus tear on the outside of the right knee or by way of advancing osteoarthritis, or as a result of age and increased natural wear and tear due to obesity, and is not related to her compensable injury by accident.
11. Since plaintiff's current right knee problems are not related to her compensable injury and because there is no credible medical testimony in support thereof, plaintiff's back and hip conditions are not related to her compensable right knee injury.
12. Based on Dr. Speer's testimony that plaintiff was not complaining of hip and back pain when he saw her and based on Dr. Obremskey's testimony that a limp caused by an impaired knee cannot cause arthritis in one's other knee and back, and further based on Dr. Speer's testimony that he was aware of no peer review or epidemiological studies supporting the proposition that walking on an impaired knee caused problems with other body joints, plaintiff's hip and back complaints are unrelated to her compensable injury.
13. Dr. Obremsky did not assign plaintiff an impairment rating. Dr. Burroughs' medical notes indicate a 10% impairment rating to plaintiff's right knee and Dr. Speer, who saw plaintiff only one time on November 28, 2001 at the request of plaintiff, found plaintiff to have a 25% impairment rating to her right knee.
14. Plaintiff's average weekly wage based on the Form 22 is $295.40, yielding a compensation rate of $196.94.
15. Plaintiff was paid temporary total disability compensation at a compensation rate of $173.34 according to the Form 60 filed in this matter. Plaintiff is entitled to be paid for the difference between her compensation rate and the rate she was paid pursuant to the Form 60.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that her current medical condition is causally related to her compensable injury by accident of May 1, 1998. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to establish that she suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). Plaintiff is not entitled to recover benefits under the Act.
3. Plaintiff is entitled to no additional medical treatment under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
4. Plaintiff is entitled to be paid for her 10% permanent partial impairment rating to her knee. N.C. Gen. Stat. § 97-31.
5. Plaintiff's average weekly wage is $295.40, yielding a compensation rate of $196.94. Plaintiff is entitled to have defendants pay the arrearage that is due based on temporary total disability compensation that was paid at a lower compensation rate pursuant to the Form 60 filed in this matter. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for additional medical treatment and indemnity compensation is hereby DENIED.
2. Defendants shall pay plaintiff for her 10% impairment rating to the knee, subject to an attorney's fee set out below.
3. Defendants shall pay plaintiff the difference between the temporary total disability compensation that was paid at a lower compensation rate of $173.34 and the $196.94 compensation rate set out in this Opinion and Award, subject to an attorney's fee set out below.
4. Plaintiff's counsel is entitled to have 25% of the amounts awarded in paragraphs 2 and 3 of this award to be deducted from the lump sums due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 13th day of January 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/mb